COLLINS v. PEARSALL.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

1. Mortgages (§ 251*)—Acceptance of Assignment by Assignee—Recovery
    of Money Paid Assignor.
        Plaintiff, owning liens on premises mortgaged to defendant, paid de-
    fendant for an assignment of the mortgage, and left it with defendant
    for execution. The assignment contained a clause reciting that it was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

without recourse, except for breach of covenant as to the amount due. Defendant, after erasing the exception, executed and mailed the assignment to plaintiff, with a letter stating that she refused to sign it till she erased such exception. Plaintiff returned it, asking that the stricken clause be restored. Correspondence followed, in which plaintiff still insisted on the original covenant, in view of a payment claimed to have been made, but not indorsed, though the mortgagor held a receipt therefor similar to others for undisputed payments, and in which plaintiff also offered to reassign, and defendant refused to take back the mortgage. Finally plaintiff wrote a letter, again asking whether defendant was willing to take a reassignment of the mortgage and to pay him the amount received, or, if she did not wish to do that, whether she was willing to repay the difference between the amount paid her and the amount actually due on the mortgage according to the receipts, and demanded return of the assignment. Defendant thereupon returned the assignment as erased, but refused to recognize the mortgagor's receipts. Plaintiff thereupon offered to return the mortgage, which was refused, and he then sued for the amount paid. *Held*, that plaintiff's demand for return of the assignment was not an election to accept the assignment with the exception stricken out, that his letter containing it could not be construed as assenting to an acceptance of an assignment in that form, and he was entitled to recover.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 660; Dec. Dig. § 251.*]

2. MORTGAGES (§ 251*)—OVERPAYMENT FOR ASSIGNMENT—REPAYMENT BY ASSIGNOR.

Where one pays for the assignment of a bond and mortgage the full amount unpaid, relying on indorsements as containing all that has been paid, the assignor should repay the sum of what she or her predecessor in title has been paid more than was indorsed; and, if there is any difference between her and the mortgagor over the amount unpaid, it should be adjusted at her instance, instead of in an action by the assignee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 660; Dec. Dig. § 251.*]

3. ACTION (§ 16*)—IMPORTANCE OF FORM AS AFFECTING RIGHT TO RELIEF.

The precise form of an action is not important, in determining the right to relief, where all the salient facts are alleged.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 16.*]

4. MONEY RECEIVED (§ 6*)—NO VALID AGREEMENT AS GROUND FOR ACTION.

An action to recover money back, because there was never any valid agreement between the parties, is maintainable.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 21–27; Dec. Dig. § 6.*]

Appeal from Special Term, Wayne County.

Action by Thad Collins, Jr., against Adelia T. Pearsall, to recover money paid for the assignment of a bond and mortgage. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Henry Selden Bacon, for appellant.
E. W. Hamm, for respondent.

SPRING, J. In February, 1904, the defendant owned a first mortgage, with an accompanying bond, upon premises owned by one Alicia Pulver. The bond and mortgage were owned by John Bates, the

father of the defendant, and came to her after the death of her father and upon the distribution of his estate. The plaintiff owned subsequent liens upon these premises, and was desirous of purchasing the bond and mortgage, and ascertained from .the husband of the defendant the payments indorsed thereon, and wrote to the defendant, reciting these indorsements and stating the amount unpaid, and signifying his desire to purchase the bond and mortgage, to which no reply was made. Two other letters followed, without eliciting any response. On the 24th of February, 1904, the plaintiff went to the residence of the husband of the defendant, computed the amount unpaid on the bond and mortgage, after giving credit for the three payments indorsed thereon, and presented an assignment for the defendant to execute. He paid to the defendant $575.55, the amount unpaid, the bond and mortgage were handed to the plaintiff, and the assignment was left with the defendant to execute and acknowledge, for no notary was present. The assignment prepared by the plaintiff contained the following written in:

"And the party of the first part hereby covenants that there is due on said bond and mortgage the sum of $382.68, with interest thereon from October 2, 1895. This assignment is made and accepted by the parties .without recourse in any event to the party of the first part, except for breach of the above covenant."

On the 14th of March the defendant executed and acknowledged the instrument, after erasing the clause "except the breach of the .above covenant," and the same was then mailed to the plaintiff, with .a letter in her behalf stating that "she refused to sign assignment till she erased the words 'except,' etc." On the day following the plaintiff returned the same by mail to the defendant, asking that the clause stricken out be restored, suggesting some other erasure, if preferred, .and stating:

"I think it is but just that you should covenant that the amount which I have paid you is justly due on the mortgage."

No reply was made to this letter, and the defendant kept the assignment. A short time after the plaintiff learned that Mrs. Pulver, the owner of the premises, claimed to have a receipt for the sum of $100, ·dated April 3, 1893, purporting to have been signed by Bates, the then owner of the bond and mortgage, and given to Francis Walsh, .the father of Mrs. Pulver, and then the owner of the mortgaged property. There was no corresponding indorsement upon the bond .and mortgage. The conceded payments on the mortgage indebtedness were made in 1893 and the two succeeding years. Ascertaining the ·existence of this voucher, the plaintiff, under date of April 14, 1904, wrote to the defendant, giving a copy of it. The defendant did not reply. Other letters ensued, and by letter dated May 27th the· defendant declined to recognize any other payments than those indorsed, adding that she did not think the receipt for the $100 was genuine. Mr. Bates, the mortgagee, each time a payment was made, signed and delivered to Walsh a receipt for the same. The plaintiff inspected these vouchers, with the one for $100, and on the 7th of June, 1904, wrote to the defendant, saying:

"I believe myself, if one of Mrs. Pulver's receipts is genuine, that all are, but prefer to let you settle that question with her."

In that letter he also wrote, in substance, that in view of the controversy over the amount unpaid he "would prefer to reassign" the bond and mortgage to the defendant. She, under date of the 10th of June, replied to this letter as follows:

"Dear Sir: Yours of the 7th on hand. I do not feel willing to take the mortgage back again, as you wish in your letter. I may be in Lyons before long, and will try to see you. I regard those receipts as something in the nature of a mushroom."

The matter ran along until December 9, 1904, the defendant all the time retaining the assignment, when the plaintiff wrote to her the following letter:

"Mrs. Adelia Pearsall, Sodus, N. Y.—Dear Madam: I wrote to you some time ago, asking you whether you were willing to take back the above mortgage, and you wrote that you would not do so. I again ask you if you are willing to take back the mortgage and bond, with assignment from me to you, and to pay to me the sum of $575.55, with interest from February 24, 1904, or, if you do not wish to do that, whether you are willing to repay to me the sum of $194.45, with interest from February 24, 1904, and I keep the bond and mortgage. $194.45 is the difference between the amount which I paid you and the amount actually due you at that time on the mortgage, according to the receipts which are held by Mrs. Pulver. Please answer this letter at once, and also return to me the assignment of the mortgage executed by yourself to me.

"Respectfully,            Thad Collins, Jr."

On the 12th the defendant answered as follows:

"Dear Sir: I inclose the assignment of Walsh-Bates mortgage as requested. I am not willing to take back the mortgage; neither am I willing to recognize Mrs. Pulver's receipts. * * * Mr. Collins, will you be kind enough to send me the dates and amounts of those indorsements and oblige?

"Yours very truly,            Adelia Pearsall."

The plaintiff on the next day replied, giving the dates and amounts of the payments indorsed, and also the date of the receipt for the $100, which was not indorsed on the bond or mortgage. The plaintiff offered to return the bond and mortgage, and demanded the repayment of the sum paid to her, which she refused to make, and on the 6th of January this action was brought to recover the same.

The essential facts are not in dispute. The court found that the parties intended the purchase and sale of the bond and mortgage should be made effective by a written agreement; that the transaction was not completed on the day when the money was paid—

"but that defendant should thereafter execute and deliver to plaintiff a written assignment of said bond and mortgage, duly acknowledged, which should embody all the terms and conditions thereof.

"Sixth. That no agreement in respect to the terms and conditions of said written assignment was reached between the parties prior to December 9, 1904."

As one of the conclusions of law, it was declared that the request of the plaintiff contained in the letter of December 9, 1904, to return the assignment, and from which the clause "except for breach of the above covenant" had been stricken out, "was an election on the

part of plaintiff to accept said assignment in that form"; further, that the covenant in the assignment "supersedes any prior oral agreement on that subject," and that the payment of the $100 in controversy, if one was made, did not authorize the recovery of the sum paid by the plaintiff.

In other words, the pith of the decision is that, because the plaintiff requested the return of the assignment in the letter of December 9th, he elected to make effective the written agreement and accept the assignment with the clause erased. I cannot concur in this conclusion. I agree with the learned trial judge that it was the intention of the parties to complete their negotiations by the delivery of a written assignment, which should embody the covenants assumed by the assignor. The plaintiff expected the assignment would be executed as he had prepared it, and as soon as it was received by him, materially changed, as he believed, he at once returned it, requesting explicitly that the eliminated clause be restored. At no time did he assent to the acceptance of the assignment with this clause stricken out. When it developed that there was a live controversy over the question of the $100 payment, which was not indorsed, and for which Mrs. Pulver possessed a receipt, apparently in the same form and handwriting as the other vouchers, he did not wish to assume the responsibility of that receipt. He had paid the full amount unpaid on the bond and mortgage, relying upon the indorsements as containing all that had been paid. If the owner of the mortgage, or her predecessor in title, had been paid more than had been indorsed, she should repay that sum to the plaintiff. If there was a real difference between her and the person liable to pay the mortgage over the amount unpaid, that difference should be adjusted at her instance, instead of in an action by the plaintiff.

Nor do I think the letter of December 9th is fairly susceptible to the interpretation placed upon it by the court below. We must bear in mind that the plaintiff all the time was insisting strenuously upon restoring the assignment or agreement to its former condition. In the letter referred to he suggested the two alternatives to the defendant, either to repay him the sum he had paid to her, so that the parties would be in the same situation as before their negotiations, or repay him the sum of $100 and interest thereon from the date of the receipt, recognizing the validity of the payment, or at least absolving him from any controversy over it with Mrs. Pulver. If the defendant repaid him the money, the plaintiff would not expect to receive the assignment. If, however, she returned him the excess paid, he would become the owner of the bond and mortgage by the delivery of the assignment, and with the question of the validity of that payment adjusted the covenant was unimportant, for Mrs. Pulver made no claim of any other payment. If he was assenting unqualifiedly to the return of the assignment to him, the two alternative propositions suggested would be meaningless. If he was to accept the assignment, even if she did not comply with either of these propositions, she would not be likely to pay much attention to them. The easiest way out of the dilemma for her would be to return the assignment. The whole

controversy would then be ended in her favor. There is nothing in the letter indicating a purpose on the plaintiff's part to abandon the position he had uniformly maintained of insisting upon the assignment remaining as he had prepared it. She returned the assignment, declining either to take back the bond and mortgage or to recognize the receipts of Mrs. Pulver. The plaintiff promptly commenced this action, all of which acts are consistent with his conduct from the beginning of the negotiations, and indicate that no agreement had been consummated.

The precise form of the action is not important. All the salient facts are alleged, showing that the negotiations never developed into an executed agreement. Without any substantial disagreement, the facts alleged were proved, and entitle the plaintiff to the relief he is after, to wit, the repayment of the money. Upon the trial evidence was given for and against the genuineness of the receipt impugned. A finding either way might have been made and been justified by the evidence. The court made no finding on that subject. It was not necessary, as no binding agreement had been perfected. The only importance of the testimony is that it showed there was an actual disagreement over this alleged payment, and of sufficient significance to vindicate the course of the plaintiff in refusing to accept the altered assignment. The plaintiff is not endeavoring to reform the assignment. He is trying to recover the money back, because there was never any valid agreement, and the action is maintainable. De Wolff v. Howe, 112 App. Div. 104, 98 N. Y. Supp. 262; Roberts v. Ely et al., 113 N. Y. 128, 131, et seq., 20 N. E. 606; Weston v. Brown, 158 N. Y. 360, 53 N. E. 36.

It is claimed that, if the plaintiff should fail to recover the $100 of Mrs. Pulver, then he can maintain an action on the covenant in the assignment. Her conduct signifies she repudiated any liability on the covenant. Otherwise, she would not have insisted on expunging the clause from the instrument. After the correspondence, and after her refusal to retain the clause stricken out, she might well claim that by the acceptance of the assignment a practical construction was given to it by the parties against any liability, if a less sum were actually due. The parties intended by the clause that the defendant guaranteed the amount stated, and which plaintiff paid, was the correct sum unpaid. Attention was sharply called to the clause, and there was much discussion over it, and its import was comprehended. Striking it out indicated that the parties conceived it was important. Further, with this clause stricken out, there is left the explicit declaration that no recourse is to be had in any event to the assignor.

Anyway, if he accepted the assignment, he was buying two lawsuits —one against Mrs. Pulver, and one against the defendant. He was not required to enter into an agreement which imposed any such burdens upon him. He did not intend to do so. He was endeavoring to avoid just such calamities. The judgment should be reversed, and a new trial granted.

Judgment reversed, and a new trial granted upon the law and facts, with costs to the appellant to abide event. All concur.